Peter J. BRENNAN, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

L. C. SINOR, d/b/a L. C. Sinor Trucking
Company et al., Defendants.

No. 72-C-227.

United States District Court,
N. D. Oklahoma,
Civil Division.

Oct. 30, 1974.

Judgment Nov. 13, 1974.

Heirberto deLeon, U. S. Dept. of Labor, Dallas, Tex., for plaintiff.

Fred W. Woodson, Tulsa, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

In this Fair Labor Standards Act (Act), 29 U.S.C. § 201 et seq., case the parties by agreement have submitted the same in three separate issues or propositions.

During the trial the parties settled the first issue or proposition which involved overtime pay claimed to be due to employees James R. Ellsworth and Leonard Ewert prior to the time covered by the second issue or proposition. Accordingly, in keeping with the settlement reached by the parties on this issue an appropriate judgment should be entered in favor of Plaintiff on behalf of Ellsworth and Ewert and against Defendant L. C. Sinor, d/b/a L. C. Sinor Trucking Company in the amount of $193.57 relative to Ellsworth and $221.03 relative to Ewert.

In issue or proposition two, the Plaintiff claims that after a Department of Labor investigation Defendant L. C. Sinor d/b/a L. C. Sinor Trucking Company (Sinor) as employer, issued checks to 12 employees for wage underpayments but as to eight of these employees the Defendants Sinor and J. D. Bradshaw (Bradshaw), as his Superintendent, wrongfully caused them to endorse and deliver their checks back to them, thereby avoiding the required wage payments under the law. As to one of the eight employees (Turpin) Defendants claim that said employee cashed his check and kept the money and as to the other seven employees Defendant Bradshaw asserts that they lent the money represented by their checks to him personally which then enabled him to personally lend $5,000.00 to Sinor who was in financial trouble. He supports his contention by producing signed receipts from the seven employees, each in the amount of $25.00, by which they acknowledged a loan to Bradshaw and acknowledged receiving payment thereon from him in the amount of $25.00. Bradshaw signed no notes or other evidence binding him in writing to these alleged loans. He did endorse the seven checks and admits cashing them. Bradshaw claims that Sinor knew nothing of these loans personally made between him and the seven employees. Sinor claims no knowledge of these loans and acknowledges that he owes $2,000.00 on his note to Bradshaw for the $5,000.00 loan, $3,000.00 thereof having been paid by him to Bradshaw.

Plaintiff acknowledges that if these alleged loans to Bradshaw were bonafide and voluntarily made by the employees, the Plaintiff should not prevail on this issue or proposition but that if the employees, or any of them, were deceived by Bradshaw into endorsing the checks and delivering them to him, that Plaintiff should recover judgment herein for such amount against Sinor on the basis that he was their employer and was a party to the wrongful transactions and against Bradshaw as his Superintendent.

The amounts of the checks to the eight employees were as follows with claimed payments thereon shown in the right column:

| Employee | Amount of Check | Repayments |
|---|---|---|
| James R. Ellsworth | 786.56 | 25.00 |
| Leonard Ewert | 885.55 | 25.00 |
| Onyan Phelan | 947.90 | 100.00 |
| Thomas R. Noe | 324.95 | 25.00 |
| James Allen Wales | 497.67 | 25.00 |
| Gene Kellenberger | 371.26 | 25.00 |
| Fredie Griggs | 668.45 | 375.00 |
| James W. Turpin | 122.53 | –0– |

As to employee Turpin, the Court finds that he received and kept the proceeds of his check. His check and the manner in which it was handled does not conform to the overall pattern as to the other seven employees. Turpin cashed his check at a grocery store. It was not endorsed by Bradshaw nor cashed or deposited by Bradshaw. Turpin says he gave the proceeds to Bradshaw and Bradshaw denies this. The other employees endorsed their checks and delivered them to Bradshaw. This conflicting testimony under the circumstances is resolved against the Plaintiff as to Turpin and recovery of the amount of the Turpin check by Plaintiff should be denied.

[redacted] As to each of the following employees the Court finds and concludes from their own testimony that they voluntarily lent the proceeds of their checks to Bradshaw personally and were not deceived by him or Sinor in any way in doing so:

| Employee | Amount lent | Repaid | Total Owing |
|---|---|---|---|
| Leonard Ewert | 885.55 | 25.00 | 860.55 |
| Fredie Griggs | 668.45 | 375.00 | 293.45 |

Accordingly, as Plaintiff acknowledges in view of this factual finding that Plaintiff should not recover these amounts judgment should be denied in this regard as to said employees.

However, as to the following employees:

| Employee | Amount | Less Credit | Owing |
|---|---|---|---|
| James R. Ellsworth | 786.56 | 25.00 | 761.56 |
| Onyan Phelan | 947.90 | 100.00 | 847.90 |
| Thomas R. Noe | 324.95 | 25.00 | 299.95 |
| James Allen Walls | 497.67 | 25.00 | 472.67 |
| Gene Kellenberger | 371.26 | 25.00 | 346.26 |
| Total | $2,928.34 | $200.00 | $2,728.34 |

the Court finds that they were deceived by Bradshaw in that he wrongfully and falsely told them, in substance, that their checks were needed only to straighten out company records regarding expenses and wrongfully failed to advise them that their checks represented an underpayment of their wages and that the amount represented thereby was entitled to be retained by them. These employees testified to such false representations and though this is denied by Bradshaw the Court resolves this factual dispute in favor of Plaintiff. As to all of the employees listed immediately above, the requirements of the Act will not permit the money due them by their respective checks involved herein to enure to the benefit of their employer, either directly or indirectly, or go to another person for their employer's benefit. In this connection, 29 CFR 531.35 in pertinent part provides:

> "Whether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear'. The wage requirements of the Act will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."

The above administrative position, though not controlling on this Court, is believed to be a proper interpretation of the Act. As to Kellenberger and his testimony that he did not feel that he was entitled to the money represented by his check, the case of Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) holds that he may not waive or release this payment if such would contravene the statutory policy. The Court finds and concludes that a waiver or release by him would contravene and serve to nullify the statutory policy of the Act. If Kellenberger refuses to accept the money, upon the same being recovered herein, it may be paid into the Treasury of the United States. Wirtz v. Jones, 340 F.2d 901 (Fifth Cir. 1965). In this connection, the court further finds from the evidence and the circumstances in this case that Defendant Sinor was a party to this scheme and the recovery as to these employees by Plaintiff should therefore be against Bradshaw and Sinor. Though some of the employees testified that Sinor was personally involved in their endorsing their checks over to Bradshaw, both Sinor and Bradshaw testified to the contrary. Circumstantial evidence, however, convinces the Court that Sinor was a party to the scheme. This is based on the evidence that the underpayment checks due the employees which he signed were not covered by adequate funds in his bank account to cover all of them. It is deemed unlikely that he would have engaged in this practice except upon the proposition that the checks or some of them would be endorsed over, in effect being covered by their own proceeds. Also, the circumstances of the alleged loan from Bradshaw to Sinor and the lack of clarity in the testimony about the same being paid back leads the Court to the conclusion that Sinor was a party to the scheme. Bradshaw also being deemed a party to the scheme and being Superintendent over the men for the employer Sinor is included in the definition of an employer under the Act and liable as such. 29 U.S.C. § 203 defines an "employer" as follows:

> " 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . "

The Court finds and concludes that Bradshaw was acting directly in the interest of Sinor in relation to the employees last above listed and is therefore an employer under the Act. Thus, Plaintiff should recover an appropriate judgment on behalf of the five employees last listed above in the total amount of $2,728.34 and such judgment should be against both Sinor and Bradshaw. Walling v.

Atlantic Greyhound Corporation, 61 F. Supp. 992 (E.D.S.C.1945); Hertz Driv-urself Stations v. United States, 150 F.2d 923 (Eighth Cir. 1945).

■ As to issue or proposition three, the Court finds and concludes that the claimed underpayments as to employees Ewert, Kellenberger and Phelan have not been established by the Plaintiff. These employees were hauling on a commission basis. In all instances they were paid above the minimum wage for hours worked in such hauling. However, Plaintiff claims that after they put in 40 hours hauling each work week that their further hours of hauling during each work week were paid at the agreed commission of 20% and not increased to time and a half or to 30%. The employees generally claimed that they worked about 85 hours per work week. The company records show that they were paid for both straight time and overtime each week. The Defendants and the bookkeeper involved testified that the hauling tickets of these employees were sent in for payment to the office and that the hauling tickets were separated into those earned within forty hours of work during the first part of each work week and those hauling tickets earned thereafter during the work week. They further testified that as to the latter tickets they were computed and paid at the rate of 30% or representing time and a half for that work accomplished after 40 hours of each work week. An examination of the pertinent checks reveals that this must be so. Taking the average 85 hours of work per week as claimed by Plaintiff for these employees and relating those hours to straight time and overtime as shown by the checks and supporting papers, it becomes obvious that they were paid approximately one and a half time on the approximate 45 overtime hours as compared with their payment for straight time on the first 40 hours of each work week.

Accordingly, these employees were not paid in violation of the Act but were paid a commission of 20% on the first forty hours of commission hauling each work week and 30% or time and a half on hours worked over 40 hours each work week. The commissions paid were all above the minimum wage as to both straight time and overtime. Plaintiff should not recover as to these employees.

■ As to employee Turpin who worked in the yard first as a mechanic and later as a loader, the Plaintiff claims that he was on a salary of $2.50 per hour and worked overtime for which he was not paid. The testimony of Turpin is less than satisfactory. The Plaintiff used 68 hours per work week as a mechanic and 60 hours per work week as a loader as the basis for computing the overtime claimed to be due this employee. But Turpin's testimony does not support the basis so used by the Plaintiff. Turpin said he went to work at 6:00 a. m. and then said 7:00 a. m. His testimony was inconsistent as to when he quit. He testified that he was usually out of there by 2:00 or 3:00 o'clock in the afternoon on the mechanic deal and then testified that he remained there until 6:30 p. m., 7:00 p. m. and 9:00 p. m. He also testified that he closed up the yard on many evenings. The Superintendent denied this and after observing Turpin the Court must conclude that he would not be the type person that one would allow to close up a business establishment at the end of the day. The Superintendent testified that Turpin only worked 40 hours a week and put in very little overtime for which he was properly paid. Time slips regarding Turpin were put in evidence, some of which he signed. They generally supported the Superintendent to the effect that Turpin generally worked only forty hours or less each week with but little overtime for which he was paid time and a half. The Court therefore finds and concludes that Turpin was paid at a rate above the minimum wage for his straight time worked and at time and a half for such overtime as he put in. Plaintiff should not recover judgment on behalf of Turpin in this issue or proposition.

As to employee Bob Giles the evidence establishes and the Court finds that he was guaranteed and paid a weekly salary of $150.00. Sinor so testified. He operated a front end loader in the yard. Giles worked three weeks at this weekly salary. This weekly salary was for a forty hour week. Giles testimony as to the number of hours he worked each week is basically unsatisfactory. He first testified that he could not say how many hours he worked each week. He then testified that he worked 8 to 10 hours per day for five days and a half day on Saturday. He then testified that he averaged 45 to 50 hours per week. The evidence shows that he got the same amount of money for each of the three weeks that he worked. Sinor testified that he did guarantee Giles $150.00 a week but he further testified that he did not know what hours he worked. Bradshaw, the Superintendent of Giles, testified that Giles worked only forty hours per week. He further testified that Giles did not work any on Saturdays. He did testify that Giles came to the yard one Saturday but that he told him to go on home, that he (Bradshaw) would do the unloading. Company records in evidence show a time slip for Giles for each of the three weeks that he worked. Giles signed each of these time slips showing the total hours worked to be 40 hours for each week for which he was paid $150.00 at the rate of $3.75 per hour.

■ It is the Plaintiff's contention that Giles in fact worked overtime and that under the provisions of 29 CFR § 778.113 [1] Giles should be paid for his overtime hours worked each week at time and a half computed on his regular rate of compensation which would be $150.00 divided by 40 hours or $3.75 per hour to which is added one half for time and a half. His overtime hours should therefore be compensated at the rate of $5.63 per hour. The Court agrees with this method of computation on the basis that Giles was paid a weekly salary. But the Court finds from the evidence that Giles did not in fact work overtime during any of the three weeks that he worked. The Court finds from the evidence as above set forth and particularly from the testimony of the Superintendent and the time slips signed by Giles that Giles in fact only worked 40 hours each workweek for which he was paid the agreed salary which is above the minimum wage requirement. Thus, Plaintiff is not entitled to recover anything herein on behalf of Giles.

As to employee Daniel Dawson, it is the contention of the Plaintiff that he was paid a weekly salary of $175.00 for a 40 hour week but that he in fact worked more than 40 hours per week and was not paid anything for his overtime hours. The work slip signed by Dawson for the first week shows that he only worked a total of 35 hours for which he was paid $87.50 at the hourly rate of $2.50. The work slip for the second week of employment, also signed by Dawson, shows that he worked forty hours for which he was paid $100.00 at the rate of $2.50 per hour and that he worked 20 hours overtime for which he was paid $75.00 at the rate of $3.75 per hour, or time and a half, for a total weekly compensation of $175.00. Dawson's work slip for the third week shows the same as for the second week with $175.00 being the total amount paid. Dawson did not sign this work slip. No work slips were put in evidence by ei-

1. This regulation provides as follows:

"(a) *Weekly salary.* If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. If an employee is hired at a salary of $70 and if it is understood that this salary is compensation for a regular work-week of 35 hours, the employee's regular rate of pay is $70 divided by 35 hours, or $2 an hour, and when he works overtime he is entitled to receive $2 for each of the first 40 hours and $3 (one and one-half times $2) for each hour thereafter. If an employee is hired at a salary of $70 for a 40-hour week, his regular rate is $1.75 an hour."

ther side for any of the remaining 21 weeks that Dawson worked. However, there was placed in evidence stubs from his weekly checks which indicated that his total earnings for each week except the first week were $175.00. Dawson testified that he was paid at the rate of $2.50 per hour; that he worked ten hours per day for six days a week; that sometimes he would quit at noon on Saturday; that he averaged 55 hours per week; that he worked about the same each day and that some days maybe he worked an hour overtime. He also testified that he might have worked less than 55 hours per week and also that he might have worked less than 50 hours per week. Finally, he testified that if he took off during any week that he would make up for it. Plaintiff urges that upon the foregoing evidence the Court should conclude that Dawson was paid a weekly salary of $175.00 per week for a 40 hour week and as he worked more than 40 hours each week he has not been paid anything for his overtime which should be computed at $175.00 per week divided by 40 hours which comes to $4.38 per hour and $6.57 per hour for time and a half overtime. If Dawson did work 60 hours a week and was not paid for overtime he would have worked 22 weeks (excluding the first week) times 20 hours per week overtime for a total of 420 overtime hours for none of which time he has been paid. On this basis he would be entitled to pay in the amount of 420 hours times $6.57 an hour or $2,759.40. However, strangely the Government only claims that Dawson was underpaid for his 23 week period of employment in the amount of $385.00.

In any event, the Court finds and concludes from the evidence that the agreement between Dawson and his employer was that he would be paid at the rate of $2.50 per hour for 40 hours and then would work an additional 20 hours of overtime per week for which he would be paid time and a half or $3.75 per hour. This is supported by the testimony of Dawson to the effect that he was employed to work at the rate of $2.50 per hour for straight time. It is further supported by the only time slips placed in evidence, two of which were signed by Dawson and from the check stubs it would appear that this arrangement was accomplished throughout the rest of his period of employment. Therefore, finding that the agreement between Dawson and his employer was that he would work 40 hours per week at the rate of $2.50 per hour and 20 additional hours per week at time and a half, the Court concludes that Dawson has not been underpaid. In fact, if some of his testimony is to be believed Dawson has been overpaid. It is therefore the finding and conclusion of the Court that the work agreement between Dawson and his employer was not that he would work 40 hours per week for a salary of $175.00. Rather, the work agreement between Dawson and his employer was that he would work 40 hours per week for $100.00 at $2.50 per hour straight time and that he would work 20 hours per week overtime at time and a half for $75.00 at $3.75 per hour for all of which he has been paid.

Based on the foregoing Plaintiff is entitled to an appropriate judgment against the Defendants as above indicated restraining the withholding of wages found to be due certain employees under the Act as above set forth together with interest at 6% per annum from date the respective amounts became due. In the circumstances of this case, the Court finds in the exercise of its discretion that it is unnecessary to issue a permanent injunction against the Defendants from violating the provisions of the Act in the future.[2] Triple "AAA" Company v. Wirtz, 378 F.2d 884 (Tenth Cir. 1967); Buckley v. Wirtz, 326 F.2d 838 (Tenth Cir. 1964).

---

2. In this connection L. C. Sinor is no longer doing business as L. C. Sinor Trucking Company. No violation is shown against L. C. Sinor Sand Company, Inc. None of the employees now involved work for any of the Defendants.

Counsel for Plaintiff will prepare an appropriate judgment based on the foregoing and submit the same to the Court within ten (10) days from the date hereof.

## JUDGMENT

Plaintiff having filed his complaint and amended complaint alleging violations of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 et seq.), hereinafter referred to as the Act, the defendants having answered and denied such allegations, and the Court having heard and considered the testimony and documentary evidence, the stipulations of the parties and the arguments of counsel, and the Court being otherwise fully advised in the premises has filed its Memorandum Opinion herein on October 30, 1974, which contains the findings of fact, conclusions of law and decisions of the Court herein, which by reference is made a part hereof, it is hereby,

Ordered, adjudged and decreed that the defendant L. C. Sinor, doing business as L. C. Sinor Trucking Company, be, and he is hereby restrained from withholding the payment of overtime compensation due to his following former employees under the Act, in the following respective amounts:

| | |
|---|---|
| James R. Ellsworth | $193.57 |
| Leonard Ewert | 221.03 |
| Total | $414.60 |

The terms of this paragraph shall be deemed satisfied if defendant L. C. Sinor delivers to the plaintiff individual cashier's or certified checks in the aforesaid respective amounts, less legal tax withholdings payable to the aforesaid individuals and/or Employment Standards Administration, Labor. It is further,

Ordered, adjudged and decreed that the defendants L. C. Sinor and J. D. Bradshaw, jointly and severally, be and they are hereby, restrained from withholding the payment of overtime compensation due to their following former employees under the Act, in the following respective amounts:

| | |
|---|---|
| James R. Ellsworth | $ 898.64 |
| Onyan Phelan | 1,000.52 |
| Thomas R. Noe | 353.94 |
| James Allen Walls | 557.75 |
| Gene Kellenberger | 408.59 |
| Total | $3,219.44 |

The terms of this paragraph shall be deemed satisfied if defendants L. C. Sinor and/or J. D. Bradshaw deliver to the plaintiff a cashier's or certified check in the sum of $3,219.44, payable to "Employment Standards Administration, Labor." This sum represents net wages after tax withholdings which have already been made, and interest. It is further,

Ordered, adjudged and decreed that plaintiff's prayer for an injunction against violations of sections 15(a)(2) and 15(a)(5) of the Act be, and the same is hereby, denied.

Upon receipt by plaintiff of unpaid wages as provided in this judgment, he shall promptly proceed to make distribution in appropriate shares to those persons entitled thereto under this judgment; or to the legal representative of any deceased person so named. If, after making reasonable and diligent efforts to disburse said unpaid wages to the persons entitled thereto, plaintiff is unable to do so because of inability to locate a proper person, or because of a refusal to accept payment by any such person, he shall, as provided in 28 U.S.C. § 2041, deposit such unpaid funds with the Clerk of this Court. Any of such funds may be withdrawn for payment to a person entitled thereto upon order of this Court.

It is further ordered, adjudged and decreed, that the claims and issues presented herein by the plaintiff on behalf of James W. Turpin in the amount of $122.53 and Leonard Ewert in the amount of $860.55 and Fredie Griggs in the amount of $293.45, all alleged im-

proper returns to the defendants of wage underpayments made to these individuals and Leonard Ewert, Gene Kellenberger and Onyan Phelan for alleged failure to pay overtime for their commission hauling and James W. Turpin for alleged failure to pay overtime for his work as a mechanic and as a loader and Bob Giles and David Dawson for alleged underpayments for overtime as salaried employees are not allowed and are denied and such issues are determined in favor of the defendants as shown by said Memorandum Opinion and Judgment is hereby entered on said issues in favor of defendants.

It is further ordered, adjudged and decreed that costs of this action shall be taxed against the defendants L. C. Sinor and J. D. Bradshaw, jointly and severally.